WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JONATHAN LONGNECKER, et al.,     )
                                 )
                Plaintiffs,     )
                                 )
        vs.                     )
                                 )
AMERICAN EXPRESS COMPANY, et al.,   )
                                 )    No. 2:14-cv-0069-HRH
              Defendants     )

O R D E R

Motion to Compel Arbitration

Defendants move to compel arbitration.[1]  This motion is opposed.[2]  Oral argument was requested and has been heard.

Background

Plaintiffs are Jonathan Longnecker, Erandi Acevedo, Jennifer Flynn, Bonita Kathol, and Janet Seitz.[3]  Defendants are American Express Company and AMEX Card Services Company.

_____

[1]Docket No. 31.

[2]Docket No. 36.

[3]The instant motion does not involve plaintiff Kathol and thus any reference herein to "plaintiffs" is to only Longnecker, Acevedo, Flynn, and Seitz.

Plaintiffs are former employees at defendants' Phoenix call center.  In their complaint, plaintiffs allege that defendants have violated the Fair Labor Standards Act (FLSA) because defendants did not pay overtime for pre-shift work and work performed during meal breaks and because defendants miscalculated plaintiffs' rate of overtime pay by failing to include incentive payments and shift differentials in their regular rates of pay. Plaintiffs bring their FLSA claims on behalf of themselves and other similarly situated current and former employees.

Defendants contend that plaintiffs are subject to defendants' Arbitration Policy, which was introduced in 2003.  Since 2003, all new hires are required to sign an Employment Arbitration Acknowledgment Form as a condition of their commencement of employment.[4]  Longnecker, Acevedo, and Flynn were all hired after 2003, and all signed a New Hire Employment Arbitration Acknowledgment Form.[5]  The Acknowledgment Forms that Longnecker, Flynn, and Acevedo signed provide that the employee "acknowledge[s] that [he] ha[s] received and been given the opportunity to review the American Express Company Employment Arbitration Policy" and that the employee "understand[s] that arbitration is the final and exclusive forum for the resolution of all

_____

[4]Declaration of Arlene McKane at 1-2, ¶ 4, attached to Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

[5]Exhibit A, Reply Declaration of Arlene McKane, attached to Defendants' Reply Brief in Further Support of Their Motion to Compel Arbitration, Docket No. 38.

employment-related disputes between American Express and [the employee] that are based on a legal claim."[6] Longnecker, Flynn, and Acevedo do not dispute that they signed Acknowledgment Forms when they were hired.

In 2007, defendants extended the Arbitration Policy to employees who had been hired prior to 2003.[7] These employees were given an opportunity to "opt out" of the Arbitration Policy.[8] Plaintiff Seitz was hired by defendants prior to 2003 and thus was given the opportunity to "opt out" of the Arbitration Policy, but she did not do so.[9]

The 2007 Arbitration Policy provides that "[t]he agreement between each individual and American Express to be bound by the Policy creates a contract requiring both parties to resolve all employment-related disputes that are based on a legal claim through final and binding arbitration."[10] The Arbitration Policy provides that

> disputes subject to arbitration under this Policy include: i) all
> legal claims that an individual had or in the future has against

---

[6]New Hire Employment Arbitration Policy Acknowledgment Form, Exhibit A, McKane Reply Declaration, which is attached to Defendants' Reply Brief in Further Support of their Motion to Compel Arbitration, Docket No. 38.

[7]McKane Declaration at 2, ¶ 5, attached to Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

[8]Id. at ¶ 7.

[9]Id. at 3, ¶ 11.

[10]American Express Company Employment Arbitration Policy at 1, Section II, Exhibit A, McKane Declaration, attached to Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

the Company or its officers, directors, shareholders, employ-
ees, and/or agents and which arise out of or relate to an
individual's application for employment, employment with the
Company or separation from the Company[.[11]]

More specifically, the Arbitration Policy provides that

"Covered Claims" include, but are not limited to:

* * *

2.    failure to pay wages, bonuses or other compensation;

* * *, and

7.    claims for alleged violations of any other common law,
federal, state, or local statute, ordinance, regulation or
public policy, including, but not limited to, Title VII of
the Civil Rights Act of 1964..., the Age Discrimination in
Employment Act, the Fair Labor Standards Act, the
Americans with Disabilities Act, the Family and Medical
Leave Act of 1993, and the Employee Retirement
Income Security Act of 1974.[[12]]

The Arbitration Policy further provides that "[a]ll claims subject to arbitration under the

Policy **MUST** be submitted on an individual basis.  **THERE SHALL BE NO RIGHT OR**

**AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS OR COLLEC-**

**TIVE BASIS.**"[13]

---

[11]Id. at 2, ¶ B.

[12]Id. at ¶ B(2) & (7) (emphasis added).

[13]Id. at 3, ¶ D(1) (emphasis in original).

-4-

The Arbitration Policy provides that it "shall be governed by and construed and enforced in accordance with the laws of the State of New York without regard to principles of conflicts of law."[14] Covered claims, however, are decided by the arbitrator based on the "rules of law of the state in which events giving rise to the Covered Claim took place, any applicable federal law and the rules stated in this Policy."[15]

The Arbitration Policy further provides that

> American Express reserves the right to alter, amend, modify, or revoke this Policy with 30 days' written notice to employees, except that all Demands filed with the Company at the time such written notice issues shall be subject to the Policy then in effect. Any alteration, amendment, modification, or revocation to the Policy may be done only in writing, and approved by either the Executive Vice President of Human Resources or the Managing Counsel of the Employment Law Group.[[16]]

By signing the Acknowledgment Forms, Longnecker, Flynn, and Acevedo acknowledged that they had received a copy of the Arbitration Policy, had an opportunity to review the Arbitration Policy, and understood "that arbitration is the final and exclusive forum for the resolution of all employment-related disputes between American Express

---

[14]Id. at 11, Section VIII.

[15]Id. at 9, Section V, ¶ B.

[16]Id. at 11, Section VII.

and [the employee] that are based on a legal claim."[17] The Acknowledgment Forms further provide that the employee

> understand[s] that the employment related disputes subject to arbitration under the Policy include any claims arising under any federal, state or local statute, regulation, or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment or termination of employment…, including but not limited to the following:
>
> - Title VII of the Civil Rights Act of 1964
> - The Employee Retirement Income Security Act of 1974, as amended
> - The Civil Rights Act of 1991
> - The Age Discrimination in Employment Act
> - The Americans with Disabilities Act
> - The Family and Medical Leave Act
> - State human rights or anti-discrimination laws
> - Breach of contract, promissory estoppel, or any other contract claims
> - Whistleblower or retaliation claims
> - Defamation, employee negligence, or any other tort claims
> - Disputes related to certain Company employee benefits plans[.[18]]

The Acknowledgment Forms also provide that the employee "understand[s] and agree[s] that [he] shall have no right or authority for any claims to be arbitrated on a class action basis or on bases involving claims brought in a representative capacity on behalf of any

---

[17]New Hire Employment Arbitration Policy Acknowledgment Form, Exhibit A, McKane Reply Declaration, which is attached to Defendants' Reply Brief in Further Support of their Motion to Compel Arbitration, Docket No. 38.

[18]Id.

other employees or other persons similarly situated[.]"[19]   The Acknowledgment Forms

further provide that the employee "understand[s] and agree[s] that American Express may

amend or modify the Policy in the future with notice to me and that I will be bound by such

modifications."[20]   And finally, the Acknowledgment Forms provide that the employee

"agree[s] to submit any and all employment related disputes based on a legal claim to

arbitration, and agree[s] to waive [his] right to trial before a judge or jury in federal or state

court in favor of arbitration under the Policy."[21]

Defendants now move to compel arbitration of plaintiffs' FLSA claims.

<u>Discussion</u>

"A motion to compel arbitration is decided according to the standard used by

district courts in resolving summary judgment motions pursuant to Rule 56, Fed. R. Civ.

P."   <u>Coup v. Scottsdale Plaza Resort, LLC</u>, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011).

"However, federal courts are required to enforce agreements to arbitrate vigorously,

according to their terms, and to resolve ambiguities in favor of arbitration."   <u>Ross Sinclaire</u>

<u>& Assocs. v. Premier Sr. Living, LLC</u>, Case No.  11–CV–5104 YGR, 2012 WL 2501115, at *5

(N.D. Cal. June 27, 2012).   "The [Federal Arbitration Act] 'leaves no place for the exercise

of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the

---

[19]<u>Id.</u>

[20]<u>Id.</u>

[21]<u>Id.</u>

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" <u>G & K, P.A. v. Willett</u>, Case No. CV12–0373–PHX–DGC, 2012 WL 1438474, at *2 (D. Ariz. April 25, 2012) (quoting <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218, (1985)).  "'The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" <u>Ross Sinclaire</u>, 2012 WL 2501115, at *5 (quoting <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000)).  "Generally, 'the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" <u>Id.</u> (quoting <u>Green Tree Fin. Corp.-Alabama v. Randolph,</u> 531 U.S. 79, 91 (2000)).  "However, where the issue is whether there exists an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the burden of showing that it exists." <u>Id.</u>  "Only when there are no disputed issues of material fact as to the existence of a binding agreement should the court rule on the question of compelling arbitration." <u>Id.</u>  "When the party opposed to arbitration does so on the ground that no binding agreement to arbitrate exists, the district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." <u>Id.</u>

There is no real dispute here that if there are valid and enforceable arbitration agreements, plaintiffs' FLSA claims fall within the scope of those agreements.  Rather, the parties' dispute focuses on whether valid and enforceable agreements to arbitrate exist.

"A district court looks to state law in determining whether a valid, enforceable arbitration agreement exists." Naria v. Trover Solutions, Inc., 967 F. Supp. 2d 1332, 1336 (N.D. Cal. 2013).   Although the Arbitration Policy provides that the Policy shall be "governed by and construed and enforced"according to New York state law,[22] defendants argue that even if Arizona law were applied to this question, as plaintiffs suggest, there would be a valid and enforceable agreement to arbitrate.  Under Arizona law, "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." Rogus v. Lords, 804 P.2d 133, 135 (Ariz. Ct. App. 1991).  "The requirement of certainty is relevant to the ultimate element of contract formation, i.e., whether the parties manifested assent or intent to be bound." Id.  "[W]hen parties bind themselves by a lawful contract, a court must give effect to that contract as written if the terms are clear and unambiguous." Mechanical Air Eng'g Co. v. Totem Const. Co., 801 P.2d 426, 427-28 (Ariz. Ct. App. 1989).

Plaintiffs argue that defendants have failed to meet their burden of showing that valid arbitration agreements exist.  First of all, plaintiffs contend that there appears to be more than one version of the Arbitration Policy.  Plaintiffs contend that the 14-page Policy that defendants attached as Exhibit A to the instant motion is not the same agreement that

---

[22]American Express Company Employment Arbitration Policy at 11, Section VIII, Exhibit A, McKane Declaration, which is attached to Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

defendants' counsel emailed to plaintiffs' counsel on February 4, 2014.[23] Plaintiffs contend that although the two agreements "appear to be substantively the same, the one provided to the Court has a different logo, includes forms, and has different pagination."[24] Plaintiffs argue that it is unclear from defendants' motion which of these two "agreements" defendants contend binds plaintiffs to arbitrate their claims.

It is not unclear from defendants' motion which Arbitration Policy they are arguing binds plaintiffs to arbitrate their claims. Arlene McKane, defendants' Human Resources Manager, Benefits, avers that the Arbitration Policy in Exhibit A is a copy of the 2007 updated Arbitration Policy and that this is the Policy Longnecker, Acevedo, and Flynn were given a copy of and had an opportunity to review and the Policy Seitz was given the opportunity to opt out of.[25] Plaintiffs have offered no evidence to rebut McKane's averments.

Plaintiffs next argue that defendants have offered nothing that demonstrates that the Arbitration Policy in Exhibit A is in any way connected or related to the Acknowledgment Forms that Longnecker, Acevedo, and Flynn signed. Without some connection

---

[23]Arbitration Policy attached to email from Sharon A. Lisitzky, Exhibit A, Defendants' Motion to Stay Briefing on Plaintiffs' Motion to Proceed as a Collective Action [etc.], Docket No. 23.

[24]Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration [etc.] at 5-6, Docket No. 36.

[25]McKane Declaration at 2-3, ¶¶ 5 & 10-11, attached to Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

between the two documents, plaintiffs argue that it is not possible to tell what the terms of the arbitration agreements were.

Defendants have offered evidence that ties the Arbitration Policy in Exhibit A to the Acknowledgment Forms. As discussed above, McKane avers that the Arbitration Policy in Exhibit A is the Arbitration Policy that Longnecker, Acevedo, and Flynn were given to review and that it is the Policy that Seitz was given the opportunity to opt out of.

Plaintiffs also make much of the fact that the Acknowledgment Forms bear a page number of 13, but that page 13 of the Arbitration Policy is not the Acknowledgment Form. Plaintiffs contend that this suggests that the Acknowledgment Form was part of a larger document that defendants have never produced.

The fact that the Acknowledgment Form is numbered as page 13 is not an indication that the Acknowledgment and the Arbitration Policy are not related documents. The Acknowledgment Form does not appear to have been intended to be the signature page of the Policy itself. Rather, the Acknowledgment Form expressly provides that the Arbitration Policy is a separate document. And, there is nothing improper about having employees sign an acknowledgment form that is separate from the arbitration policy. See Coup, 823 F. Supp. 2d at 936 (upholding arbitration agreement where employees signed separate acknowledgment forms).

Plaintiffs also point out that the Arbitration Policy in Exhibit A lists the "failure to pay wages, bonuses or other compensation" as a covered claim as well as expressly

including FLSA claims among the covered claims, but that the Acknowledgment Forms signed by Longnecker, Flynn, and Acevedo do not include either the failure to pay wages or FLSA claims in the list of covered claims.   Plaintiffs argue that if the one-page Acknowledgment Forms were related to the Arbitration Policy in Exhibit A, one would expect them to contain the same list of claims.

The fact that the Policy expressly lists FLSA claims as covered claims and the Acknowledgment Forms do not does not mean that the agreements to arbitrate are not valid.  The Acknowledgment Forms plainly state that the list of covered claims is not exclusive.

In sum, plaintiffs have offered nothing to rebut defendants' evidence valid arbitration agreements exist.  Thus, the court finds that valid arbitration agreements exist as between plaintiffs and defendants.

Plaintiffs then argue that the arbitration agreements are unenforceable because they are unconscionable.  For purposes of the instant motion, the court will assume that Arizona applies as plaintiffs suggest.  In Arizona, "[i]t is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable."  Coup, 823 F. Supp. 2d at 947.  "Plaintiffs, however, 'have a high bar to meet in demonstrating that an arbitration agreement is unconscionable.'"  Id. (quoting Effio v. FedEx Ground Package, 2009 WL 775408, * 3 (D. Ariz. March 20, 2009)).  "In Arizona, unconscionability includes both procedural unconscionability, i.e., something is

-12-

wrong with the bargaining process, such as, oppression or surprise, or substantive unconscionability, i.e., the contract terms per se are overly harsh or generate one-sided results." Id. "'[W]hile contracts may have elements of both procedural and substantive unconscionability, a claim of unconscionability can be established with a showing of substantive unconscionability alone[.]'" Id. (quoting Wernett v. Service Phoenix, LLC, 2009 WL 1955612, at *3 (D. Ariz. 2009)).

Plaintiffs first argue that the arbitration agreements are procedurally unconsciona-ble. "Procedural unconscionability addresses the fairness of the bargaining process, which 'is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'" Clark v. Renaissance West, LLC, 307 P.3d 77, 79 (Ariz. Ct. App. 2013) (quoting Maxwell v. Fidelity Fin. Srvcs., Inc., 907 P.2d 51, 57-58 (Ariz. 1995)). Plaintiffs argue that the arbitration agreements are procedurally unconscionable because they are contracts of adhesion. "An adhesion contract is typically a standardized form 'offered to consumers of goods and services on essentially a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.'" Broemmer v. Abortion Services of Phoenix, Ltd., 840 P.2d 1013, 1015 (Ariz. 1992) (quoting Wheeler v. St. Joseph Hosp., 133 Cal. Rptr. 775, 783 (Cal. Ct. App. 1976)). Longnecker, Flynn, and Acevedo argue that because they were required to agree to the Arbitration Policy as a

condition of employment and because they had no ability to negotiate the terms of the agreements, the arbitration agreements were contracts of adhesion.  As for Seitz, plaintiffs argue that the fact that she could "opt out" of the Arbitration Policy  does not mean that the arbitration agreement was not an adhesion contract.  See Batory v. Sears, Roebuck and Co., Case Nos. 03–15661, 03–15781, 2005 WL 434457, at * 1 (9th Cir. Feb. 25, 2005) (finding arbitration agreement an adhesion contract even though employees were given a choice as to whether to enter into the agreement).  Plaintiffs contend that they were not able to negotiate any terms of the Arbitration Policy and insist that this was a "take it or leave it" situation because they had to either agree to arbitration or they would not be hired.  In sum, plaintiffs argue that the arbitration agreements are procedurally unconscionable because they are contracts of adhesion.

Two employees in Equal Employment Opportunity Commission v. Cheesecake Factory, Inc., Case No. CV 08–1207–PHX–NVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009) (internal quotations omitted), made similar arguments.  The  two employees argued that the arbitration agreement in question was "procedurally unconscionable because Cheesecake Factory presented a standardized take it or leave it' unilaterally drafted form to the weaker parties."  The court rejected this argument because neither employee stated in his affidavit that "he would have declined Cheesecake Factory's offer of employment if he had understood the Arbitration Agreement required employees to seek resolution of employment disputes in an arbitral rather than a judicial forum."  Id.  The court also

rejected the argument because "[m]ere inequality in bargaining power is not sufficient to invalidate an arbitration agreement." Id. (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)). The court also noted that "an agreement may be enforceable even if the terms offered are not negotiable." Id. "Even if the weaker party does not understand all of the terms included in an agreement, the agreement may be enforceable if it is consistent with reasonable expectations and not unduly oppressive." Id. (citing Broemmer, 840 P.2d at 1016). Similarly here, the court rejects plaintiffs' arguments that the arbitration agreements were contracts of adhesion.

But even if the arbitration agreements were contracts of adhesion that would not mean that they are procedurally unconscionable. Contracts of adhesion are not per se unenforceable. Broemmer, 840 P.2d at 1016. A contract of adhesion is only unenforceable if it does not fall within the reasonable expectations of the weaker party and if the contract is unconscionable. Id. Plaintiffs make no reasonable expectation argument, instead arguing only that the arbitration agreements are procedurally unconscionable because they are contracts of adhesion.

"There is [no] Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability." R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC, 729 F. Supp. 2d 1110, 1115 (D. Ariz. 2010). Rather, to determine whether an agreement is procedurally unconscionable,

-15-

> Arizona courts focus on "those factors bearing upon ... the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible ...."

Id. (quoting Maxwell, 907 P.2d at 58). Plaintiffs have made no arguments as to any of these factors. Thus, their procedural unconscionability argument fails.

But, plaintiffs also argue that the arbitration agreements are substantively unconscionable. "[S]ubstantive unconscionability addresses the fairness of the terms of the contract itself." Clark, 307 P.3d at 79. "Substantive unconscionability requires an examination of the actual terms of the contract and the relative fairness of the obligations assumed by each party." Batory v. Sears, Roebuck and Co., 456 F. Supp. 2d 1137, 1140 (D. Ariz. 2006). "'Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.'" Id. (quoting Maxwell, 907 P.2d at 59).

Plaintiffs argue that the confidentiality clause in the Arbitration Policy is substantively unconscionable. The Arbitration Policy provides that

> [a]ll proceedings under this Policy are private and confidential, unless applicable law provides to the contrary. All parties shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the contrary. The

arbitrator shall have the authority to make appropriate rulings
to safeguard that confidentiality.[26]

Plaintiffs cite to no Arizona case which has held that a confidentiality provision is substantively unconscionable. Instead, plaintiffs contend that the court can look to California law on this issue because "if Arizona law has not addressed an issue, [the court] 'looks approvingly to the laws of California[.]'" Moore v. Browning, 50 P.3d 852, 859 (Ariz. Ct. App. 2002) (quoting State v. Vallejos, 358 P.2d 178, 182 (Ariz. 1960)). The Ninth Circuit has held confidentiality provisions substantively unconscionable under California law if they favor the employer, if they are too broad, and if they essentially impose a gag order such that employees are "unable to mitigate the advantages inherent in being a repeat player." Davis v. O'Melveny & Myers, 485 F.3d 1066, 1078 (9th Cir. 2007) (citation omitted), overruled on other grounds by, Kilgore v. KeyBank, Nat'l Ass'n, 673 F.3d 947 (9th Cir. 2012); see also, DeGraff v. Perkins Coie LLP, Case No. C 12–02256 JSW, 2012 WL 3074982, at *4 (N.D. Cal. July 30, 2012) (confidentiality provision substantively unconscionable because "Perkins Coie has institutional knowledge of prior arbitrations. In contrast, individual litigants, such as Plaintiff, are deprived from obtaining information regarding any prior arbitrations. Thus, Perkins Coie is the only party who would obtain any benefit from this provision without receiving any negative impact in return").

--------

[26]American Express Company Employment Arbitration Policy at 6, Section IV, ¶ D, Exhibit A, Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

Similarly here, the confidentiality provision in the arbitration agreements keep only plaintiffs in the dark regarding prior arbitration decisions and only defendants would benefit from this provision.  Contrary to defendants' contention, the confidentiality provision here is not similar to the one in <u>Monsanto v. DWW Partners, LLP</u>, Case No. CV–09–01788–PHX–FJM, 2010 WL 234952, at *3 (D. Ariz. Jan. 15, 2010). There, the plaintiff "contend[ed] that a term providing for communications in connection with arbitration proceedings to be privileged is unconscionable", but the court found that "[t]his basic confidentiality provision is neither overly broad nor unfairly one-sided. It is not substantively unconscionable." Here, the confidentiality provision requires that anything and everything pertaining to the arbitration remain confidential and it is unfairly one-sided. Thus, the court finds that the confidentiality provision is substantively unconscionable.

Plaintiffs next argue that the modification and termination clause in the Arbitration Policy is substantively unconscionable.  That clause provides that

> American Express reserves the right to alter, amend, modify, or revoke this Policy with 30 days' written notice to employees, except that all Demands filed with the Company at the time such written notice issues shall be subject to the Policy then in effect. Any alteration, amendment, modification, or revocation to the Policy may be done only in writing, and approved by

either the Executive Vice President of Human Resources or the
Managing Counsel of the Employment Law Group.[27]

Plaintiffs compare this to the modification and termination clause in the arbitration

agreement in <u>Batory</u>, which the court found substantively unconscionable.  <u>Batory</u>, 456 F.

Supp. 2d at 1140.  There, the arbitration agreement allowed the employer to modify or

terminate the agreement upon sixty days notice, but the employees did not have the same

right.  <u>Id.</u>  The court found the

> sixty days notice provision ... insignificant because it does not
> allow the employee to negotiate any modification or termina-
> tion.  Defendant has effectively taken away Plaintiff's ability to
> consider and negotiate the terms of his contract. This is further
> emphasized by the fact that the [arbitration agreement] was a
> contract of adhesion in the first place. This provision effectively
> oppresses Plaintiff and creates an "overall imbalance of rights
> and obligations imposed by the bargain."

<u>Id.</u> (quoting <u>Maxwell</u>, 907 P.2d at 58).  Similarly here, plaintiffs argue that the arbitration

agreements give defendants the right to modify or terminate the agreements but that the

employees have no right to do so or to even object to any modifications or changes that are

made.

 <u>Batory</u> suggests that unilateral modification clauses are substantively unconsciona-

ble and defendants have not cited to any authority to the contrary.  But, in this case,

defendants have not used the unilateral modification clause and plaintiffs are faced with

---

[27]American Express Company Employment Arbitration Policy at 11, Section VII,
Exhibit A, Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

the exact terms to which they originally agreed.  Thus, the court does not perceive how this clause could be considered substantively unconscionable.  But even if it were, as will be discussed below, it would not change the outcome here.

"The [c]ourt has three options in the event it determines that a clause of a contract is unconscionable as a matter of law." Batory, 456 F. Supp. 2d at 1141.  "[It] may: (1) refuse to enforce the contract; (2) enforce the remainder of the contract without the unconscionable clause; or (3) limit the application of the unconscionable clause as to avoid any unconscionable result." Id.  "A contract may be severed, however, only if its terms clearly show the parties intended it to be severable." Mousa v. Saba, 218 P.3d 1038, 1044 (Ariz. Ct. App. 2009).

Here, the parties intended that unenforceable clauses in the arbitration agreements could be severed because the Arbitration Policy contains a severability clause.  That clause provides that "[i]f any portion or provision of this Policy other than Section II.D.1. 'Individual Claims Only' is held to be void or unenforceable, the remainder of this Policy will be enforceable and any part may be severed from the remainder, as appropriate."[28] It would be appropriate to sever the confidentiality and unilateral modification clauses and enforce the remainder of the agreement because doing so would be "consistent with the Federal Arbitration Act and Arizona public policy favoring both arbitration and class

_____

[28]American Express Company Employment Arbitration Policy at 11, Section VIII, Exhibit A, Defendants' Motion to Compel Arbitration [etc.], Docket No. 31.

-20-

actions." Cooper v. QC Financial Services, Inc., 503 F. Supp. 2d 1266, 1292 (D Ariz. 2007).

In addition, it would be appropriate to sever the unilateral modification clause because

defendants have never used it.  This is not a case in which the unconscionable terms

"permeated the arbitration provision in such a way as to invalidate the entire arbitration

agreement." Id. at 1290.  There are not multiple provisions in the Arbitration Policy that

are unconscionable and contrary to what plaintiffs seem to suggest, arbitration is not

always a one-sided means of resolving disputes.  In fact, there are provisions in the

Arbitration Policy that are plainly intended to level the playing field between defendants

ant their employees.  For example, discovery is permitted, defendants agree to cover most

of the costs of the arbitration, and defendants also agree to pay $2000 towards the

employee's attorney fees.[29]  In sum, the Arbitration Policy can be enforced without the

unconscionable clause(s).

Finally, plaintiffs argue that the arbitration agreements are unenforceable because

they violate the National Labor Relations Act.[30]  "Contract provisions are unenforceable if

they violate legislation or other identifiable public policy."  1800 Ocotillo, LLC v. WLB

Group, Inc., 196 P.3d 222, 224 (Ariz. 2008).  Plaintiffs' argument is based on In re D. R.

---

[29]Id. at 7, Section IV(G) & 10-11, Section VI(B) & (C).

[30]Plaintiffs have filed an unfair labor charge against defendants, alleging that the Arbitration Policy is unlawful.  See Exhibit A, Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration [etc.], Docket No. 36.  On May 22, 2014, the NLRB issued a complaint against defendants.  See Exhibit A, Plaintiffs' Notice of Fact, Docket No. 46.

<u>Horton, Inc.</u>, 357 NLRB No. 184, 2012 WL 36274, (Jan. 3, 2012).  There, the National Labor

Relations Board considered

> whether an employer violates Section 8(a)(1) of the National
> Labor Relations Act when it requires employees covered by the
> Act, as a condition of their employment, to sign an agreement
> that precludes them from filing joint, class, or collective claims
> addressing their wages, hours or other working conditions
> against the employer in any forum, arbitral or judicial.

<u>Id.</u> at *1.  The NLRB held that "such an agreement unlawfully restricts employees' Section

7 right to engage in concerted action for mutual aid or protection, notwithstanding the

Federal Arbitration Act (FAA), which generally makes employment-related arbitration

agreements judicially enforceable."  <u>Id.</u>  Plaintiffs contend that the Fifth Circuit in <u>D.R.</u>

<u>Horton, Inc. v. N.L.R.B.</u>, 737 F.3d 344 (5th Cir. 2013), overruled the NLRB's decision, in

part, because the recess appointments of some of the NLRB panel members were invalid,

but that an administrative law judge in an NLRB proceeding recently held that <u>In re D.R.</u>

<u>Horton</u> remains the applicable NLRB precedent until the Supreme Court rules on the recess

appointment issue.  <u>See</u> <u>The Pep Boys Manny Moe & Jack of California and Robert Nash</u>,

Case 31-CA-104178, slip op. at 2 (March 7, 2014).   Thus, plaintiffs argue that the NLRB

ruling in <u>In re D.R. Horton</u> remains good law, which means that the arbitration agreements

in this case violate public policy because they required plaintiffs to waive their rights to

engage in the concerted pursuit of legal redress.

Contrary to plaintiffs' contention, the Fifth Circuit did not overrule the NLRB's decision because of the recess appointments. Rather, the Fifth Circuit declined to weigh in on the validity of recess appointments because it determined that it did not have to do so in order to address the merits of the NLRB's decision. <u>D.R. Horton</u>, 737 F.3d at 351. As to the merits, the Fifth Circuit concluded, as has "[e]very one of [its] sister circuits to consider the issue," that "arbitration agreements containing class waivers [are] enforceable." <u>Id.</u> at 362. Although the Ninth Circuit has not had occasion to address this issue yet, it has "note[d] that the two courts of appeals, and the overwhelming majority of the district courts, to have considered the issue have determined that they should not defer to the NLRB's decision in <u>D.R. Horton</u> on the ground that it conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act...." <u>Richards v. Ernst & Young, LLP</u>, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013) (citing <u>Owen v. Bristol Care</u>, 702 F.3d 1050, 1052 (8th Cir. 2013); <u>Sutherland v Ernst & Young LLP</u>, 726 F.3d 290, 299 (2d Cir. 2013); <u>see also</u>, <u>Siy v. CashCall, Inc.</u>, Case No. 2:13-cv-000953-PAL, 2014 WL 37879, at *13 (D. Nev. Jan. 6, 2014) (observing that "[a]ll of the courts of appeals that have considered whether the FLSA establishes a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually have concluded that arbitration agreements containing class waivers are enforceable in FLSA cases"); <u>Morris v. Ernst & Young LLP</u>, Case No. C-12-04964 RMW, 2013 WL 3460052, at *9 (N.D. Cal. July 9, 2013) (noting that every circuit court that has addressed the issue has held "that arbitration

agreements can validly waive collective actions because Congress did <u>not</u> intend to confer a nonwaivable right to a class action under the FLSA"). Thus, plaintiffs' argument based on <u>D.R. Horton</u> that the arbitration agreements are not enforceable fails.

<u>Conclusion</u>

Based on the foregoing, the court granted defendants' motion to compel arbitration[31] at oral argument. The clerk of court shall enter judgment dismissing without prejudice Longnecker's, Acevedo's, Flynn's, and Seitz's claims against defendants.

DATED at Anchorage, Alaska, this 28th day of May, 2014.

<u>/s/ H. Russel Holland</u>
United States District Judge

---

[31]Docket No. 31.